# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICARDO NEGRON,<br>    Plaintiff, | : | No. 3:17-cv-1487 (SRU) |
| v. | : | |
| MULLIGAN, et al.,<br>    Defendants. | : | |

## INITIAL REVIEW ORDER

Ricardo Negron ("Negron"), currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this amended complaint *pro se* under 42 U.S.C. § 1983 asserting deliberate indifference to medical needs. Negron's complaint was received on September 5, 2017, and his motion to proceed *in forma pauperis* was granted on September 8, 2017. He filed his amended complaint on September 21, 2017. The named defendants are Lieutenant Charter ("Charter"), Correctional Officer Mata ("Mata"), Warden Mulligan ("Mulligan"), Deputy Warden Roach ("Roach") and Deputy Warden Hines ("Hines").

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.      Allegations

The complaint sets forth the following allegations. In March 2013, prior to his incarceration, Negron was involved in a motor vehicle accident. He suffered injuries to his head, hip and spine, including several fractures. As a result of the accident, Negron has permanent damage to various areas of his body.

On October 16, 2015, Negron was incarcerated. Upon his admission, he informed correctional staff about his injuries. As a result of his injuries and his obesity, Negron was given a bottom bunk pass. Correctional staff also verified his medication.

On April 12, 2017, Negron received footwear from an outside vendor. A correctional employee approved the purchase. His medical records contain a pass for footwear effective from January 23, 2017, through January 23, 2018. On April 16, 2017, Dr. Naqvi entered an order in Negron's medical filed confirming that he could use his own shoes because the shoes met prison requirements. The footwear began to wear, so Negron attempted to order another pair. He was not permitted to do so.

On July 17, 2017, Negron submitted an Inmate Request form to Roach regarding the denial. On July 20, 2017, Negron's counselor informed him that Mulligan and Roach were no

2

longer honoring any passes.  Negron then submitted an Inmate Request to Mulligan asking why health services passes were no longer being honored.  The following day, Captain Paine told Negron he would look into the issue.  To date, Negron has not received a response from Captain Paine.

Negron renewed his request on July 23, 2017.  On July 27, 2017, Negron spoke to Mulligan while he was touring the housing unit.  Negron asked why his pass was not being honored.  Mulligan merely stated that he was no longer honoring passes.

Unable to resolve the issue with Mulligan and Roach, Negron spoke to Hines, who asked Negron to provide him a copy of the pass and said that he would ensure that Negron could receive footwear from an outside vendor as arranged by his family.  Negron followed up with an Inmate Request.

Negron also contacted the commissary and learned that sneakers for medical issues were not available.  The commissary only carries standard sizes of sneakers.  While Negron was attempting to resolve this issue, his injuries worsened.  He was unable to put pressure on his right foot and began to limp.  The medical unit verified the existence of Negron's pass.  Negron asked his counselor to speak to Roach about his medical need for specially altered shoes.  On August 21, 2017, however, Negron's counselor told him that Roach refused the request.

On August 23, 2017, Negron collapsed and fell down the stairs.  He attributes the fall to the lack of proper footwear.  He limped to the officer's station and asked Mata to contact the medical unit for emergency assistance.  Mata refused.  A nurse entered the housing unit a short time later and instructed Mata to call the medical unit for Negron.  Mata again refused.  The following day, Captain Claudio called the medical unit for Negron; he was brought to the

medical unit by wheelchair and was given an ace bandage and crutches.

On August 31, 2017, Mata instructed Negron to bring his mattress to the AP room for a mattress exchange. Negron said that he could not do so and asked if someone could move the mattress for him or if the AP officer would send someone to fetch the mattress. The request was denied. Charter observed Negron struggling to move the mattress in the hallway but refused to help him. Negron twisted his ankle while moving the mattress. Mata and Charter both refused to call for medical assistance.

II.     Analysis

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court; proper exhaustion "means using all steps that the agency holds out . . . (so that the agency addresses the issues on the merits)" and "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Completion of the exhaustion process after

a federal action has been filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). A court may, however, dismiss a complaint for failure to state a claim where the allegations on the face of the complaint establish that it is subject to dismissal, even on the basis of an affirmative defense. *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement") (citing *Jones*, 549 U.S. at 215).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies and may be found at: http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf (effective August 15, 2013). The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel. For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in Sections 4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the Inmate Grievance Procedure. *See id.* at 9.6(4)(A). Thus, claims regarding conditions of confinement are subject to the Inmate Grievance Procedure.

Under Administrative Directive 9.6(6), an inmate must first attempt to resolve the matter informally. He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form and send that form to the appropriate staff member. *See id.* If all attempts to resolve the matter informally are unsuccessful, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G) & (I). The Level 2 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K).

Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator should respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or level 2 appeals to which there has been an untimely response by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal is

reviewed by the Commissioner of Correction or his or her designee, and the reviewer should respond within thirty business days of receipt of the appeal. *See id.*

Although Negron describes, and attaches as exhibits, many Inmate Requests he submitted, he does not allege that he filed any grievances on this issue. The most recent response to his requests is dated September 1, 2017, four days before Negron filed the original complaint and twenty days before he filed the amended complaint. Considering the time limits set forth in the directive, it does not appear that Negron could have exhausted his administrative remedies before he filed this action.

## Conclusion

The complaint is **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to exhaust administrative remedies before filing this action. Negron may file an amended complaint if he can demonstrate that he exhausted his administrative remedies before filing this action on September 5, 2017 with regard to the allegations in the original complaint and before September 21, 2017 with regard to the newly added allegations.

Negron shall file any amended complaint within **twenty (20) days** from the date of this order utilizing the Prisoner Efiling Program. If no amended complaint is timely filed, the Clerk is directed to enter judgment and close this case. In that event, Negron may file a new case after exhausting his administrative remedies.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of October 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge